# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

LISA R.,[1]

                Plaintiff,

v.                                             5:18-CV-763 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
KRISTINA D. COHN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.   PROCEDURAL HISTORY

Plaintiff filed simultaneous applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning January 31, 2008. (Administrative Transcript ("T") at 208, 215). These applications were denied initially on January 5, 2015, and upon reconsideration on May 12, 2015. (T. 67-68, 89-90). Plaintiff timely requested a hearing with an Administrative Law Judge ("ALJ").

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

(T. 136). On February 2, 2017, plaintiff appeared with her representative and testified at a hearing before ALJ Roxanne Fuller. (T.33-66). At that time, plaintiff amended her alleged onset date to April 1, 2010. (T. 40). After hearing plaintiff's testimony, the ALJ took testimony from Vocational Expert ("VE") Suman Srinivasan. (T. 60-66). On June 22, 2017, ALJ Fuller found that plaintiff was not disabled through the date of her decision. (T. 10-27). Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on April 30, 2018. (T. 1-3). Thus, the ALJ's opinion became the final decision of the Commissioner.

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months….." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI

2

disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more

3

so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze ever piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

As of the date of the administrative hearing, plaintiff was 48 years old.  (T. 37).  She was divorced with four children, resided in a mobile home, and had her driver's license.  (T. 38-39).  She graduated high school and completed two years of college.  (T. 39).

Plaintiff was employed as a full-time store manager at Family Dollar in 2010, where her duties included training and supervising other employees, setting up the store,

4

unloading trucks, and customer service. (T. 40). She left the position because she had "a lot going on," i.e. handling her divorce and dealing with an injury sustained by her youngest child. (T. 40-41). After leaving Family Dollar, plaintiff attempted to work other inventory and retail positions. However, she testified that she could not sustain employment due to concentration issues and social limitations. (T. 41-42).

Plaintiff testified that she suffered from a myriad of health issues. She experienced migraines and short-term memory impairments after suffering from a stroke in July 2015. (T. 42, 45). In addition, her lower back condition prevented her from standing and sitting for long periods of time, and caused neuropathy in her hands and feet. (T. 42-43). She also testified that she suffered from carpal tunnel syndrome, causing pain, numbness, and spasms in her hands. (T. 44). Plaintiff's sleep apnea prevented her from sleeping for more than four hours a night, however her BiPap machine "helped a lot." (*Id.*).

In addition, plaintiff testified that she suffered from several mental health conditions, including depression, anxiety, post-traumatic stress disorder, agoraphobia, and bipolar disorder. (T. 45, 48). "Anything" could trigger her depression, causing her to cry and become "really upset." (T. 46). She suffered flashbacks of her daughter's accident and past domestic abuse. (T. 46-47). Plaintiff experienced problems interacting with people, and became easily irritated. (T. 48-49). She experienced panic attacks, and struggled with concentration. (T. 49, 55).

Plaintiff cared for her youngest daughter and got her ready for school on a daily basis. (T. 49). She attempted chores around the house, but sometimes vacuuming hurt her back and knees. (T. 49-50). Although she could cook, at times she forgot to shut

5

the stove off. (T. 51). Plaintiff's daughter accompanied her when she had to leave the house, and plaintiff relied on her daughter to remind her about her various appointments. (T. 49-52). Plaintiff's paranoia prevented her from showering every day. When she did shower, plaintiff kept the curtain open, as well as the bathroom door. (*Id.*). Plaintiff would lay down for two to four hours a day, because of stress and fatigue. (T. 54).

## IV. THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 1, 2010, the alleged onset date. (T. 13). At step two, the ALJ found the following severe impairments: obesity, obstructive sleep apnea, arthritis in the right knee, residual effects of a stroke, PTSD, anxiety, and depression. (*Id.*).

At step three of the sequential analysis, the ALJ found that none of plaintiff's severe impairments, alone or in combination, met or equaled the severity of a Listed Impairment. (T. 14-15). At step four, the ALJ found that plaintiff had the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balance, stoop, kneel, crouch, crawl; frequent handling objects, that is gross manipulation, with both hands; frequent fingering, that is fine manipulation, with both hands; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights; able to perform routine and repetitive tasks; no interaction with the public; and only occasional interaction with co-workers and supervisors.

(T. 15). In making this RFC determination, the ALJ stated that she considered all of the

plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence." (T. 15). The ALJ also stated that she considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927, as well as SSRs 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*).

The ALJ considered the medical evidence as a whole, discussing plaintiff's impairments and the medical providers who treated her. (T. 16-25). After a comprehensive analysis, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found that the plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence in the record[.]" (T. 22).

After considering the evidence and plaintiff's RFC, the ALJ found at step four that plaintiff could not perform any of her past relevant work. (T. 25). The ALJ then turned to step five of the sequential analysis. The ALJ acknowledged that the plaintiff's ability to perform unskilled sedentary work had been compromised by additional limitations. (T. 26). To determine the extent to which these limitations eroded the unskilled sedentary occupation base, the ALJ considered the testimony from the VE. (T. 26, 60-65). The VE testified there were several jobs that existed in significant numbers which could be performed by a person of plaintiff's age, education and vocational background, with the RFC for sedentary work as modified by the ALJ. (T. 26). Thus, because plaintiff was capable of performing jobs which existed in significant numbers in the national economy, the ALJ found that plaintiff was not disabled. (T. 26-

7

27).

## V. ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her position that the ALJ failed to support her RFC determination with substantial evidence:

1. The ALJ improperly weighed the opinion of plaintiff's treating provider. (Plaintiff's Brief ("Pl.'s Br.") at 9-13) (Dkt. No. 11).

2. The ALJ failed to account for plaintiff's memory limitations, despite finding that "residual effects of a stroke" was a severe impairment. (*Id.* at 14-17).

Defendant argues that the ALJ properly evaluated the medical evidence of record, and her decision is supported by substantial evidence. (Defendant's Brief ("Def's Br.") at 3-11) (Dkt. No. 12). For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI. RFC/WEIGHING EVIDENCE/TREATING PHYSICIAN RULE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-

00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Weighing Evidence/Treating Physician Rule

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL

9

374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117,

120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* at 96. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

  **B. Application**

  Plaintiff contends that the ALJ failed to properly evaluate the opinion of physician's assistant ("PA") Megan Gallerani, plaintiff's primary care provider in 2015 and 2016. In particular, plaintiff argues that the ALJ erred in affording limited weight to PA Gallerani's opined limitations, as they were consistent with plaintiff's longitudinal treatment history. Plaintiff further maintains that the ALJ erred in failing to account for plaintiff's complaints of memory impairment to PA Gallerani, despite the ALJ acknowledging the fact that plaintiff suffered residual effects of a stroke.

  PA Gallerani prepared a medical source statement on January 26, 2017, having treated plaintiff for over a year. (T. 984-87). In the predominantly check-box form, she opined that plaintiff could sit for 30 minutes at a time, "before needing to get up, etc." (T. 984). Moreover, PA Gallerani indicated that plaintiff had the functional ability to sit for "at least 6 hours" in an eight-hour workday, with normal breaks. (T. 985). She opined that plaintiff could stand for thirty minutes at a time before needing to change positions, and could stand/walk for "about two hours" total in an eight-hour workday. (T. 984-85). PA Gallerani checked "yes" in response to the question, "does your patient need a job that permits shifting positions at will from sitting, standing, or walking?" (T. 985). She further opined that plaintiff could frequently lift and carry less than ten

11

pounds, and occasionally lift and carry ten pounds. (*Id.*). With respect to postural limitations, PA Gallerani concluded that plaintiff could rarely twist, stoop, and climb stairs, and could never crouch, squat or climb ladders. (*Id.*). Plaintiff could frequently look down, turn her head right or left, and hold her head in a static position, however could only occasionally look up. (*Id.*). According to PA Gallerani, plaintiff could frequently use her hands and fingers for grasping and fine manipulation, and could occasionally reach. (*Id.*).

When asked if plaintiff would "sometimes need to take unscheduled breaks during an eight-hour workday," PA Gallerani wrote "possible." (T. 986). She opined that during an eight-hour workday, plaintiff would be off task more than 20% of the time. (*Id.*). She also estimated that plaintiff was likely to be absent from work more than four days per month. (*Id.*). Last, PA Gallerani wrote that "difficulty with memory and recall are [plaintiff's] biggest limitations." (*Id.*).

As a threshold matter, plaintiff concedes that PA Gallerani was not an "acceptable medical source," thus her opinion was not entitled to controlling weight. Rather, the Social Security Administration categorizes physician's assistants as "other medical sources," whose opinion may be considered as to the severity of a claimant's impairment and ability to work. 20 C.F.R. §§ 416.913(d)(1), 404.1513(d)(1). The rulings direct an ALJ to utilize various factors in evaluating the opinions of "other medical sources," including frequency of treatment, consistency with other evidence, degree of supporting evidence, thoroughness of explanation, and whether the source has an area of expertise. 20 C.F.R. §§ 404.1527(d), 416.927(d). The Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord [an

other source's] opinion based on all the evidence before [the ALJ]." *House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151 (N.D.N.Y. Mar. 2012) (quoting *Diaz v. Shalala,* 59 F. 3d 307, 313–14 (2d Cir. 1995)).

Here, the ALJ expressly considered the opinion of PA Gallerani, but afforded her opinion "little weight." (T. 24). The ALJ justified her evaluation of PA Gallerani's opinion on three bases: (1) plaintiff's mental health treatment notes reflected that she was not as limited as opined by PA Gallerani, (2) PA Gallerani's opinion was at times inconsistent with her own treatment notes, and (3) PA Gallerani's opinion appeared to be based on plaintiff's self-reported limitations, as opposed to her treatment history with the plaintiff. (*Id.*). The ALJ also noted that PA Gallerani was plaintiff's primary physical treating source, and did not treat her mental impairments. (*Id.*).

**Mental Limitations**

The ALJ took great lengths to analyze plaintiff's mental health treatment history, and compare it to the opinion evidence of record. (T. 20-22). Plaintiff established primary care with PA Gallerani in July 2015, a little over one week following her hospitalization for a stroke. (T. 841-43). PA Gallerani's initial treatment records reflect that plaintiff had not taken her prescribed psychiatric medication for some period of time, and PA Gallerani noted that plaintiff presented as tearful, overwhelmed and frustrated. (T. 834-35, 842). However, at her next follow up visit on August 7, 2015, plaintiff reported improved anxiety since recommencing her medical regimen. (T. 828).[2] By October 2015, plaintiff reported that her mental health was "going well," and

---

[2]*See also* T. 905-906 (8/18/15 Psychiatric Evaluation Note from Cortland County Mental Health Clinic – "I just moved here from Arizona to get away from my ex husband [sic] who beat

13

PA Gallerani's limited mental examination indicated that plaintiff appeared in good spirits, talkative, and excited about her weight loss. (T. 811-12). The remaining treatment records by PA Gallerani reflect generally unremarkable psychiatric findings upon examination. (T. 761, 766, 769, 774, 781, 786, 791).

Specifically regarding plaintiff's alleged memory impairments, the medical records indicate that plaintiff complained to PA Gallerani about experiencing difficulty with recall on various occasions. (T. 757, 829, 835, 842). PA Gallerani did not treat plaintiff for this issue, but referred plaintiff to her neurologist and mental health providers for follow up. Accordingly, plaintiff attended a neurology appointment on March 31, 2016. (T. 931-34). Despite plaintiff's contemporaneous complaints to PA Gallerani, there is no indication that plaintiff reported memory loss symptoms to her neurologist at this time. Instead, plaintiff complained about headaches she had been experiencing one to two times a month, which lasted a couple of minutes to a few hours. (T. 931). Nevertheless, plaintiff's neurological exam did not reveal any acute findings; she was noted to have normal attention and comprehension, with no evidence of language dysfunction. (T. 933). The neurologist also concluded that, since plaintiff's reported migraines were "very infrequent," she did not require any treatment. (T. 934). At her next appointment with PA Gallerani, plaintiff conveyed her neurologist's (apparent) opinion that "memory loss was normal," in light of her recent stroke. (T. 780).

---

me up. I had a stroke 7/6 from all the stress of the move. I'm getting better but need to get back on my psych meds. Finally got in to see PCP and they gave me 30 days of meds and I am feeling a lot better." Plaintiff further reported that her anxiety level was down, and she had recently enjoyed attending a local gathering.)

14

Moreover, plaintiff treated with social worker Jacqueline Yaman and nurse practitioner ("NP") Joanne Bigness of Cortland County Mental Health Clinic following her stroke. There, plaintiff presented with complaints of mild to moderate anxiety and depression, however there is no evidence that plaintiff complained of such extreme and consistent memory impairments to either mental health professional, who also did not qualify as "acceptable medical sources." On the contrary, NP Bigness's various mental evaluations included consistent findings that plaintiff's memory was "intact." (T. 889, 894, 896, 897, 905). Furthermore, plaintiff was regularly noted to have thought processes that appeared clear, appropriate, coherent, and logical. Her attention span and concentration were noted to be grossly intact, along with fair-to-intact judgment and insight. (T. 889-90, 893-94, 895-96, 905, 908).

Ms. Yaman and NP Bigness also prepared and co-signed a medical source statement on behalf of plaintiff, in which they identified that plaintiff had symptoms of "memory impairment," and further indicated that plaintiff would be "unable to meet competitive standards" with respect to remembering work-like procedures and understanding and remembering very short and simple instructions. (T. 919-20). As previously discussed, these findings are at odds with plaintiff's treatment notes by the same providers, who specifically note that plaintiff's memory was "intact." Thus, the ALJ was not compelled to afford Ms. Yaman and NP Bigness's opinion significant weight, in light of such inconsistencies. (T. 23). *See Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 434 (W.D.N.Y. Sept. 27, 2018) ("It is appropriate for an ALJ to accord limited weight to an opinion where it is inconsistent with [the source's] examination findings.") (internal quotations omitted) (quoting *Glena v. Colvin*, No. 1:15-CV-510,

2018 WL 739096, at *4 (W.D.N.Y. Feb. 6, 2018)).

"It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole." *Faith Grace P. v. Saul,* No. 5:18-CV-781 (DJS), 2019 WL 4305484, at *3 (N.D.N.Y. Sept. 11, 2019) (quoting *Banks v. Astrue*, 955 F. Supp. 2d 178, 188 (W.D.N.Y. 2013)). Here, other than plaintiff's subjective complaints, there was little to no objective evidence to support PA Gallerani, Ms. Yaman, and NP Bigness's opinions regarding the severity of plaintiff's memory and recall limitations. Thus, it was not error for the ALJ to omit such limitations in her mental RFC determination, and the ALJ's mental RFC determination was otherwise supported by other evidence of record, which the ALJ found more credible upon evaluation and consideration of plaintiff's treatment history.

### Physical Limitations

Plaintiff's argument that the ALJ failed to properly weigh the physical limitations opined by PA Gallerani is unavailing. There is no question that the ALJ discussed the physical limitations set forth by PA Gallerani in her decision. Moreover, plaintiff ignores the fact that the ALJ adopted PA Gallerani's physical limitations in many respects. Consistent with the ability to perform sedentary work, PA Gallerani opined that plaintiff could sit for at least six hours a day, stand for at least two hours a day, lift and carry ten pounds occasionally and less than ten pounds frequently. (T. 24). Further, PA Gallerani opined that plaintiff could do frequent handing and fingering. (*Id.*).

Conversely, the ALJ rejected other physical limitations opined by PA Gallerani in forming plaintiff's RFC. The ALJ did not err in rejecting these limitations, as her

16

physical RFC determination was otherwise supported by substantial evidence in the record. For example, the ALJ did not adopt PA Gallerani's more restrictive postural limitations, nor did the ALJ incorporate her opinion that plaintiff required shifting positions "at will." (T. 15, 985). Instead, the ALJ relied on other opinion evidence of record, including that of state agency consultant M. Brill, M.D. The ALJ afforded "great weight" to Dr. Brill's opinion that that plaintiff could lift and carry up to ten pounds, stand/walk two hours a day, and sit for six hours during an eight-hour work day. (T. 24, 98-99, 110-11). Dr. Brill found plaintiff to have less restrictive postural limitations than those opined by PA Gallerani. Moreover, Dr. Brill did not conclude that plaintiff's limitations would require her to change positions "at will." The ALJ determined that Dr. Brill's opinion was consistent with the medical evidence of record, and the court does not find error in this regard, as further set forth below. *See Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 246 (N.D.N.Y. 2013) ("The Second Circuit has held that the opinions of non-examining sources may override those of the treating sources, provided they are supported by evidence in the record.") (other citations omitted).

On February 9, 2015, plaintiff reported chronic back pain to her primary care physician, which plaintiff attributed to her weight. Plaintiff clarified that the pain was brought on by standing for extended periods of time. (T. 677). Plaintiff also complained of knee pain "when she walk[ed] for long periods of time." (T. 797). Other than some findings of tenderness upon examination, the objective evidence of record reflects that plaintiff presented for medical treatment with normal range of motion in her back, neck and lower extremities, was neurologically intact, exhibited near full to full

17

strength in her extremities, and had a normal gait. (T. 394, 405, 422, 488, 498, 555-56, 566, 585-86, 651, 673, 759, 785-86, 884-85, 933-34). An April 20, 2016 MRI of plaintiff's lumbar spine showed mild bilateral narrowing and a small disc herniation. (T. 876). Cervical imaging was negative for acute pathology. (T. 384).

A September 2014 x-ray of plaintiff's right knee was negative for significant degenerative changes. (T. 345). With respect to her ability to reach, a 2014 x-ray of plaintiff's right shoulder was normal. (T. 488, 492). Plaintiff denied any shoulder impairments at the administrative hearing; testifying that immediately after her stroke, she had some "problems" reaching, but the issue had resolved with therapy. (T. 42, 54). These objective findings of record, coupled with plaintiff's admitted activities of daily living, support Dr. Brill's opinion that plaintiff was capable of performing the physical requirements of sedentary work as modified by the ALJ.

Moreover, opinion evidence that plaintiff would require a change in position every so often is not per se inconsistent with the ALJ's RFC finding for sedentary work. As the Second Circuit has repeatedly stated, a requirement that a claimant get up and move around from time to time "does not preclude his ability to perform sedentary work." *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir.2004) ("The regulations do not mandate the presumption that all sedentary jobs in the Untied States require the worker to sit without moving for six hours, trapped like a seat belted passenger in the center seat on a transcontinental flight.")). Accordingly, the court is not convinced that the ALJ's failure to discuss or include a sit/stand option for plaintiff in her RFC determination was legal error.

18

Even assuming, *arguendo*, that the ALJ erred by not including a sit/stand option in plaintiff's RFC, that error was harmless. VEs in other cases in this Circuit have previously testified that the categories and/or representative titles identified by the VE in this case can be performed by persons requiring the option to change positions between sitting and standing. *See e.g.*, *Calabrese v. Astrue,* 592 F. Supp. 2d 379, 383 (W.D.N.Y. Jan. 9, 2009) (claimant requiring a sit/stand option could perform jobs in the category of general office clerk); *Faniel v. Colvin*, No. 14-CV-6340, 2015 WL 5655655, at *6 (W.D.N.Y. Sept. 24, 2015) (claimant requiring a sit/stand option, where every 20 minutes the individual would have to switch positions from sitting to standing, could work as an addresser); *Butts v. Astrue,* No. 11 Civ. 6769, 2012 WL 3871365, at *6 (S.D.N.Y. Sept. 6, 2012) (surveillance systems monitor jobs permit an individual to sit and stand at will). Because plaintiff could perform these positions regardless of whether the ALJ had included a sit/stand option in her RFC, "remand to consider that issue further would serve no useful purpose." *Yeomas v. Berryhill,* 305 F. Supp. 3d 464, 467–68 (W.D.N.Y. Apr. 9, 2018) (declining to grant plaintiff's request for remand despite the ALJ's failure to include a sit/stand option in plaintiff's RFC, because the positions proposed by the VE allowed the claimant to change her position at will).

**WHEREFORE**, based on the above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED** and the complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for **DEFENDANT**.

Dated: January 14, 2020

Andrew T. Baxter
U.S. Magistrate Judge